2021 IL App (4th) 200188

NO. 4-20-0188

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| JULIE ANN DALE, f/k/a Julie Ann Bennett, | ) | Appeal from the |
| Petitioner-Appellee, | ) | Circuit Court of |
| v. | ) | Pike County |
| JOSEPH JOHN BENNETT III, | ) | No. 13OP39 |
| Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jerry J. Hooker, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Turner and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1       In April 2013, petitioner, Julie Ann Dale, formerly known as Julie Ann Bennett, filed a petition for an emergency order of protection against respondent, Joseph John Bennett III, pursuant to section 214 of the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/214 (West 2012)). That same day, the trial court conducted a hearing on the petition at which Dale testified that (1) Bennett's business partner was murdered and (2) Bennett confessed to Dale that he had hired someone to commit the murder. Dale testified that she was in Illinois to give her statement and testify against Bennett, but Bennett had threatened her over the years that if she told anyone, he would hurt her. The trial court granted an emergency order of protection.

¶ 2       In October 2013, the trial court conducted an evidentiary hearing on Dale's request for a plenary order of protection. Following closing arguments, the trial court entered a plenary order of protection that contained an expiration date of October 25, 2015.

¶ 3        In September 2015, Dale *pro se* filed a request for hearing on extending the plenary order of protection for an indefinite amount of time. In support of her request, she asserted that she remained fearful for her safety and the safety of her children.

¶ 4        In November 2015, when the trial court conducted a hearing on the motion to extend the plenary order of protection, Bennett failed to appear. The court noted that Bennett had been served with summons, found that he was in default, and extended the plenary order of protection indefinitely. Shortly thereafter, the Manatee County, Florida, sheriff's office served Bennett with a copy of the extended plenary order of protection.

¶ 5        In October 2019, Bennett filed a motion to terminate the plenary order of protection, alleging that the Act does not provide for an indefinite extension of a plenary order of protection. In January 2020, the trial court conducted a hearing on Bennett's motion and denied it, concluding that plenary orders of protection can be extended for an indefinite period.

¶ 6        Bennett appeals, arguing that (1) the Act limits the duration for extensions of plenary orders of protection to two years, (2) the trial court erred by granting Dale's request for an extension of the plenary order because no good cause was shown, and (3) section 220 of the Act is unconstitutionally vague.

¶ 7        We disagree and affirm the trial court's judgment.

¶ 8                              I. BACKGROUND

¶ 9                        A. The Plenary Order of Protection

¶ 10       In April 2013, Dale filed a petition for an emergency order of protection against Bennett, alleging that Bennett (1) threatened her when he was mad, (2) installed an application on her phone to monitor her activity, (3) would not let her get a job, (4) controlled her access to money, and (5) in April 2009, hurt her wrist and arm and forced her to have sex with him. She also

sought protection for her and Bennett's four young children. The trial court granted her request and entered an emergency order of protection. Later that month, the Manatee County, Florida, sheriff's office served a copy of the order on Bennett.

¶ 11        In October 2013, the trial court conducted a hearing to determine whether to grant a plenary order of protection. Dale testified that Bennett's business partner, Tom Fazy, was murdered and that Bennett confessed to Dale that he had hired someone to commit the murder. Tom Fazy was murdered in December 2004 at his office in Midlothian, Illinois. Dale said that in February 2005, Bennett told Dale that he had someone murder Fazy and provided the name of the hit man. Bennett warned Dale that if she told anyone that he was involved in the murder of Fazy, he would hurt her or their then three-year-old son. Bennett and Dale left Illinois and went to Florida. Dale explained that, while in Florida, Bennett frequently threatened her whenever he became angry and would say that she knew what he was capable of doing—that he killed before and had no problem killing again.

¶ 12        Dale testified that, in 2009, Bennett raped her. She did not leave him at the time because she was afraid he would kill her. They separated later in 2009, and Bennett continued to threaten her life.

¶ 13        Dale testified that in February 2013, she found Bennett loading her gun while wearing rubber gloves that he brought home from his work. Dale testified, "And when I asked him why he would need to wear rubber gloves to load my gun that's registered to me, *** he said to me that he never knows what he'll have to use it for." Dale believed that Bennett was either going to use the gun to kill someone else and blame it on her or he would use it to kill her and blame it on suicide. Dale explained that she was fearful for her life. She further testified that Bennett said he was going to begin selling cocaine and marijuana at his job. She said that while she was visiting

Illinois in April 2013, Bennett called her multiple times. Bennett told Dale he had fired an employee that had bought cocaine from Bennett and the former employee was now making threats against Dale, Bennett, and their children. When Dale returned to Florida, Bennett told her that this person was still making threats, but Bennett was not afraid because he had killed before and did not mind killing again.

¶ 14 Dale said that Bennett would scream and yell at the children, throw and break things in front of the children, punch holes in the wall, and locked one child in a room. Dale testified that she believed Bennett's threats that, if she left him, he would kill her.

¶ 15 Dale called Nathaniel Davis to testify at the hearing. Davis testified he was previously a business associate of Bennett's in a real estate investment that went bad. Bennett told Davis the name of the person that Bennett hired to kill his business partner.

¶ 16 Dale also called her sister, Cindy Webb, to testify. Webb testified that she witnessed Bennett verbally abuse Dale and exhibit controlling behavior over Dale. Webb did not witness Bennett exhibiting abusive behavior toward his children and never saw any physical abuse. Webb said that in 2005, shortly after the murder of the business partner, Bennett asked Webb to get rid of a gun by throwing it into a river.

¶ 17 Dale called Bennett to testify as an adverse witness. Bennett testified that he never threatened Dale's life. He denied confessing to Davis that he had his business partner murdered and, further, denied asking Webb to get rid of a gun.

¶ 18 Bennett called both of his parents to testify. Both parents reported that they had never seen Bennett exhibit abusive behaviors.

¶ 19 Following closing arguments, the trial court explained its findings of fact and concluded that the petition had been proven. The trial court entered a plenary order of protection

- 4 -

that contained an expiration date of October 25, 2015.

¶ 20 B. The Extension of the Plenary Order of Protection

¶ 21 In February 2015, Dale *pro se* filed a petition to modify the plenary order of protection so that communication would be allowed between Dale and Bennett regarding their pending divorce and matters pertaining to their children. The trial court granted that motion the following month.

¶ 22 In September 2015, Dale *pro se* filed a request for hearing on extending the plenary order of protection for an indefinite amount of time. Dale alleged that she remained fearful for her safety and her children's safety.

¶ 23 In October 2015, Dale filed a motion to modify the plenary order of protection, asking that the prior request to allow limited communication be dismissed and that the terms of the original plenary order of protection resume. That same day, the trial court entered an order continuing the matter because Bennett had not yet been served with a copy of the petition to extend the plenary order of protection.

¶ 24 In November 2015, the trial court conducted a hearing on the motion to extend the plenary order of protection, but Bennett failed to appear. The court noted that Bennett had been served with summons. The court found that Bennett was in default and extended the plenary order of protection indefinitely. The court also vacated the order allowing limited communication. Shortly thereafter, the Manatee County, Florida, sheriff's office served Bennett with a copy of the order.

¶ 25 C. Bennett's Motion to Terminate the Plenary Order of Protection

¶ 26 In October 2019, Bennett filed a motion to terminate the plenary order of protection, alleging that an indefinite extension is not allowed by statute. In January 2020, the trial court

conducted a hearing on that motion and denied it, concluding that courts may extend plenary orders of protection for indefinite periods of time.

¶ 27        This appeal followed.

¶ 28                        II. ANALYSIS

¶ 29        Bennett appeals, arguing that (1) the Act limits the duration for extensions of plenary orders of protection to two years, (2) the trial court erred by granting Dale's request for an extension of the plenary order because no good cause was shown, and (3) section 220 of the Act is unconstitutionally vague. We disagree and affirm the trial court.

¶ 30        A. Plenary Orders of Protection can be Extended for an Indefinite Period of Time

¶ 31                        1. *The Law*

¶ 32        "The best way to determine the legislature's intent is to give the statutory language its plain and ordinary meaning." *People v. Rowell*, 2020 IL App (4th) 190231, ¶ 16 (citing *People v. Witherspoon*, 2019 IL 123092, ¶ 21, 129 N.E.3d 1208). "Where statutory language is clear and unambiguous, courts should apply the statute as written." *Id.* (citing *People v. Eppinger*, 2013 IL 114121, ¶ 21, 984 N.E.2d 475). Further, statutes should be read as a whole and construed so no part of the text is rendered meaningless or superfluous. *Id.* When the language of a statutory provision is susceptible to more than one reasonable interpretation, the court may look to additional sources to determine legislative intent. *Id.* "Such sources include the maxim of *in pari materia*, under which two statutes, or two parts of one statute, concerning the same subject must be considered together in order to produce a 'harmonious whole.' " *People v. Rinehart*, 2012 IL 111719, ¶ 26, 962 N.E.2d 444 (quoting *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555, 591 N.E.2d 427, 429 (1992)).

¶ 33        The Act "shall be liberally construed and applied to promote its underlying

purposes." 750 ILCS 60/102 (West 2018). The purposes of the Act include supporting the efforts of victims of domestic violence to avoid further abuse by reducing an abuser's access to the victim so that victims are not trapped in abusive situations by fear of retaliation. *Id.* § 102(4).

¶ 34    Section 220 of the Act states that "[a] plenary order of protection entered under this Act shall be valid for a fixed period of time, not to exceed two years." *Id.* § 220(b)(0.05). Subsection (e) further states, "Any *** plenary order may be extended one or more times ***." *Id.* § 220(e). The statute continues, stating, "An extension of a plenary order of protection may be granted, upon good cause shown, *to remain in effect until the order of protection is vacated or modified.*" (Emphasis added.) *Id.*

¶ 35                                    2. *This Case*

¶ 36    We conclude that the plain language of the Act provides for an indefinite extension of a plenary order of protection. Although the initial plenary order of protection had a specific time limit of two years, no time limit exists for an extension of such an order. Instead, the Act specifically states that, upon good cause shown, the extension may "remain in effect until the order of protection is vacated or modified." *Id.* This language is crystal clear. This language also stands in stark contrast to the language limiting the initial plenary order of protection to not "exceed two years." *Id.* § 220(b)(0.05). The legislature was clearly aware of the language necessary to impose such a time limit on an extension of a plenary order of protection but explicitly chose not to. Instead, the legislature stated that a motion to vacate or modify the order is the method by which a party may seek to change or end the order. *Id.* § 224. This is hardly a case in which the statutory language is confusing or obscure.

¶ 37    Bennett argues on appeal that because section 220(b)(0.05) of the Act states, "a plenary order of protection entered under this Act shall be valid for a fixed period of time, not to

exceed two years," that this extension also cannot exceed two years. *Id.* § 220(b)(0.05). The Illinois Supreme Court recently reiterated the principle that "specific statutory provisions will control over general provisions on the same subject." *Van Dyke v. White*, 2019 IL 121452, ¶ 46, 131 N.E.3d 511. Here, absent the specific statutory provision allowing indefinite extensions, the general rule that plenary orders entered under the Act may not exceed two years would control. However, because we have the more specific rule governing only extensions, any conflict between the general rule and the specific rule is resolved in favor of the specific one. Further, to read section 220(b)(0.05) in the manner in which Bennett suggests would render the language allowing indefinite extensions superfluous, which violates the principle of statutory interpretation that "[n]o part of a statute should be rendered meaningless or superfluous." *Id.*

¶ 38 Our conclusion is consistent with the policy goals that the Illinois legislature articulated in the Act. The legislature noted the need for robust protections for victims of domestic violence and sought to "[e]xpand the civil and criminal remedies for victims of domestic violence; including, when necessary, the remedies which effect physical separation of the parties to prevent further abuse." 750 ILCS 60/102(6) (West 2018). The legislature wrote the law so that a victim who needs an extension of a plenary order of protection need not appear in court every two years simply to dredge up their terror before the court to explain why the order remains necessary. The legislature, in its wisdom, created a statutory scheme in which after the initial two-year order, the victim may request an indefinite extension that, if granted, shifts the onus to the respondent to bring the case back to court if matters change.

¶ 39 The Act permits courts to indefinitely extend plenary orders of protection. Bennett may, as the law provides, file a motion to vacate or modify the order if he chooses.

¶ 40 B. Bennett's Argument That the Trial Court Erred by Denying

Bennett's Motion to Terminate Is Forfeited

¶ 41     Bennett also argues on appeal that the trial court made insufficient factual findings before granting the extension of the plenary order of protection. However, he failed to raise this issue before the trial court. In fact, Bennett failed to appear at the November 2015 hearing the court conducted on Dale's request to extend the plenary order of protection.

¶ 42     In Dale's request, she stated that she wanted an indefinite extension because she was "fearful for my safety and my children's safety. I fear that if he knew of our location, the children's school['s] location and my employment location he would show up unannounced and I am fearful of how he would act and fearful of what he is capable of." Dale further stated there were no material changes since the original entry of the plenary order of protection.

¶ 43     Although Bennett now claims that the trial court made insufficient factual findings before granting the extension, because Bennett failed to appear at the hearing, he deprived the trial court of the opportunity to consider this argument. The trial court ensured that Bennett was properly served before it heard the request for extension. As Dale notes on appeal, in both Bennett's motion to terminate and motion to reconsider, Bennett made arguments about only the validity of an indefinite extension.

¶ 44     "Issues not raised in the trial court are forfeited and may not be raised on appeal." *In re Marriage of Kasprzyk*, 2019 IL App (4th) 170838, ¶ 40, 128 N.E.3d 1105. Because Bennett failed to raise this issue in the trial court, his request that we reverse the trial court based upon this argument would mean that we would be reversing the trial court's decision based upon an argument it never heard. We reject Bennett's request that we do so.

¶ 45     This court has previously explained the problem with this course of action in the context of motions to reconsider as follows:

"Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency *require* that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be." (Emphasis in original.) *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248, 571 N.E.2d 1107, 1111 (1991).

¶ 46 In *Vantage Hospitality Group, Inc. v. Q Ill Development, LLC*, 2016 IL App (4th) 160271, ¶ 46, 71 N.E.3d 1, this court noted that the same principle applies to arguments. We stated that "no reason exists why the *Gardner* holding should not apply fully to either (1) rulings (as in this case) on motions for involuntary dismissal under section 2-619(a) of the Code [of Civil Procedure] or (2) to arguments, not just evidence, which are presented after the fact to the court." (Emphases omitted.) *Id.* We further explained that,

"this is the same rule that applies regarding the forfeiture of arguments that a party wishes to raise on appeal. It has long been the law of the State of Illinois that a party who fails to make an argument in the trial court forfeits the opportunity to do so on appeal." *Id.* ¶ 49.

¶ 47 C. Section 220 of the Act Is Not Vague

¶ 48 1. *The Law*

¶ 49 "Reviewing courts have a duty to construe a statute to preserve its constitutionality whenever reasonably possible. [Citation.] Indeed, statutes are presumed constitutional, and the challenging party has the burden to prove the statute is unconstitutional." *Bartlow v. Costigan*, 2014 IL 115152, ¶ 18, 13 N.E.3d 1216 (citing *People v. Masterson*, 2011 IL 110072 ¶ 23, 958

N.E.2d 686). When a party challenges a statute as vague, the court needs to decide (1) whether the statute fails to provide a person of ordinary intelligence a reasonable opportunity to understand what conduct the statute prohibits or (2) if it authorizes or encourages arbitrary and discriminatory enforcement. *Id.* ¶ 40.

¶ 50                                         2. *This Case*

¶ 51        Bennett argues that the statute is confusing or contradictory because one portion of it says the duration of a plenary order of protection is not to exceed two years but another portion states that extensions may be of an indefinite duration until vacated or modified. Bennett contends that "a reasonable person of ordinary intelligence may interpret that an extension of an [*sic*] plenary order of protection is still a plenary order of protection, and therefore shall have a limit not to exceed [two] years."

¶ 52        This is not the standard. If the fact that a reasonable person "may interpret" the statute incorrectly was all it took for a statute to be unconstitutionally vague, then almost any statute could be deemed unconstitutionally vague. The real standard is whether a reasonable person of ordinary intelligence has a reasonable opportunity to understand what the statute provides.

¶ 53        Judged in accordance with the correct standard, we conclude that the statute easily passes constitutional muster.

¶ 54                                         III. CONCLUSION

¶ 55        For the reasons stated, we affirm the trial court's judgment.

¶ 56        Affirmed.

**No. 4-20-0188**

| | |
|---|---|
| **Cite as:** | *Dale v. Bennett*, 2021 IL App (4th) 200188 |
| **Decision Under Review:** | Appeal from the Circuit Court of Pike County, No. 13-OP-39; the Hon. Jerry J. Hooker, Judge, presiding. |
| **Attorneys for Appellant:** | Joshua Emberton and David Daudell, of Law Firm of David Daudell, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Susan M. Simone, of Land of Lincoln Legal Aid, of East St. Louis, and Thomas J. Hunter, of Becker, Hoerner & Ysursa, P.C., of Belleville, for appellee. |
| *Amici Curiae*: | Tinos D. Diamantatos, of Morgan, Lewis & Bockius LLP, of Chicago, Randall M. Levine, of Morgan, Lewis & Bockius LLP, of Washington D.C., Christine Raffaele, of Illinois Coalition Against Domestic Violence, of Springfield, Sarah Megan, of Prairie State Legal Services, Inc., of West Chicago, and Melanie MacBride, of Legal Aid Society of Metropolitan Family Services, Benna Crawford, of Legal Aid Chicago, Denice Wolf Markham, of Life Span Center for Legal Services and Advocacy, Margaret Duval, of Ascend Justice, Elizabeth J. Ptacek, of Greater Chicago Legal Clinic, all of Chicago, and Sasha Drobnick, the Domestic Violence Legal Empowerment and Appeals Project, of Washington, D.C., for *amici curiae*. |