2022 IL App (4th) 200599

NO. 4-20-0599

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 6, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| PATRICK S. KLEIN, | ) | No. 19CF205 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Turner and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1        In June 2020, defendant, Patrick S. Klein, entered an open plea of guilty to residential burglary. 720 ILCS 5/19-3(a) (West 2018). In August 2020, the trial court sentenced him to 12 years in prison.

¶ 2        Defendant appeals, arguing the trial court's sentence was excessive and constituted an abuse of discretion. We disagree and affirm.

¶ 3                                I. BACKGROUND

¶ 4                                A. The Charges

¶ 5        In December 2019, the State charged defendant with (1) residential burglary (*id.*) and (2) theft (with a prior theft conviction) (*id.* § 16-1(a)(1)(A)). The State alleged that defendant entered the home of Michael Klein (defendant's brother) with the intent to commit a theft and stole a jar of change worth less than $500. Defendant had previously been convicted of felony theft in

2016.

¶ 6        Defendant was arrested in May 2020. At defendant's arraignment on these charges, the trial court informed him that the court would also be proceeding on two unrelated petitions to revoke his probation filed against him. Those probation sentences stemmed from a 2016 felony conviction for escape and a 2017 conviction for theft. The petitions to revoke alleged that defendant violated his probation by (1) committing the 2019 residential burglary and theft and (2) consuming cannabis and cocaine in December 2019. (We note that neither the petitions to revoke nor their sentences are at issue in this appeal.) The court admonished defendant that (1) he could be sentenced to up to 15 years in prison for residential burglary, (2) up to 10 years for each petition to revoke, and (3) the court could order the sentences to run consecutively.

¶ 7                        B. The Guilty Plea Hearing

¶ 8        In June 2020, the State agreed to dismiss the 2019 theft charge in exchange for defendant's open plea of guilty to residential burglary. (By an open plea of guilty, we mean that the parties had no agreement regarding what sentence the court would impose.)

¶ 9        As a factual basis for the plea, the State informed the trial court of the following:

"If called to testify, officers from Metamora police department and Michael Klein, who lives [in Woodford County], would show evidence that Michael *** complained that a change jar had gone missing from his residence on or about December 2nd, 2019. Through an investigation and with tips from Michael *** this defendant *** was interviewed by Detective Dave Frank of the Metamora police department. And [defendant] gave a written statement that he went into the residence of his brother Michael Klein without permission and took the change jar and cashed it so he could purchase cocaine."

- 2 -

¶ 10 Also in June 2020, defendant stipulated to the allegations in the petitions to revoke. The trial court accepted the guilty plea and the stipulations and scheduled all three cases for sentencing.

¶ 11 C. The Sentencing Hearing

¶ 12 In August 2020, the trial court conducted defendant's sentencing hearing. The presentence investigation report (PSI) stated that defendant was convicted of felony theft in 2016 and had been sentenced to probation and home confinement. The State twice petitioned to revoke defendant's probation, and in 2017, the court sentenced defendant to four years in prison.

¶ 13 Later in 2016, defendant was convicted of retail theft and escape. In 2017, defendant was convicted of felony theft. The PSI also stated the following:

"The defendant has been placed on Probation eight times. Five terms of Probation were revoked[,] and the defendant was resentenced to Probation. One term of Probation was revoked and the defendant was resentenced to [prison]. The terms of Probation for [the 2016 escape and 2017 theft] are currently in the revocation process."

¶ 14 The PSI also stated that defendant reported having been an alcoholic and drug addict for several years. He suffered from depression and anxiety and had been diagnosed with bipolar disorder. However, he had never received treatment for his mental health conditions. Defendant reported a long history of drug treatment, successfully completing services on one occasion and being unsuccessfully discharged for relapsing on several occasions.

¶ 15 1. *Evidence in Mitigation*

¶ 16 Christopher Johnson testified he had known defendant for a little over a year after first meeting him at a Narcotics Anonymous (NA) meeting. Johnson was shot and wounded while

serving in the military in Iraq in 2010. Johnson was medically discharged and spent the next nine years heavily using heroin and other opiates to escape his emotional pain. About three years before defendant's sentencing hearing, Johnson decided to get clean but struggled to maintain sobriety for more than a few weeks before relapsing. Eventually, a doctor suggested Johnson try NA, and when Johnson did so, that was where Johnson met defendant.

¶ 17        Johnson explained he was determined to get clean and decided he would only associate with people at NA who were fully dedicated to the 12-step program, as demonstrated by their success with the program. Johnson "saw these qualities in [defendant]," and they inspired him. Defendant attended NA at least once a day, performed service work once a week, and chaired the "newcomers meeting," where defendant would share his past traumas and difficulties and how the program was helping him. Johnson stated that "some of the more dedicated addicts" would stay after meetings to further discuss recovery. Defendant was always a part of that group, and it was there that defendant taught Johnson about the 12-step program.

¶ 18        Johnson explained that the first 90 days of sobriety were extremely difficult for him. He would have obsessions and overwhelming urges to use, "[a]nd the only support [he] had was [defendant]." When he was struggling, Johnson would call defendant, sometimes in the middle of the night, and defendant would share his experiences and provide "recovery-based solutions." Johnson described that defendant's passion for NA made it easier for Johnson to listen to defendant's advice and put it into practice. Johnson had been clean for a full year and insisted that he would not have made it without defendant. Johnson then described the "battle" that was recovery and the constant need to avoid falling back into old habits and relapse.

¶ 19        Johnson testified that defendant relapsed some months ago and stopped speaking with Johnson. Johnson left defendant messages to tell defendant that Johnson was available to help

him with his relapse. Eventually, defendant called, and Johnson helped him get into rehab. Johnson stated that when defendant is clean, "it is not in his character to lie, steal, and hurt people." Johnson had been speaking with defendant since he was in in jail. Johnson emphasized that speaking regularly with a therapist was very important to Johnson's recovery, and he believed that defendant needed the same thing to be successful.

¶ 20 On cross-examination, Johnson explained that when defendant "is in his active addiction" he tries to isolate himself from his family so he does not hurt them. Johnson said the difference between defendant when sober and when using was "night and day." While clean, defendant held a good-paying job at a metal workshop. Johnson believed that defendant had learned a lot from NA but struggled with letting others know how he feels. Johnson remarked that the same thing happened to him, but he relied on his therapist in those moments. Defendant never had anything like a therapist.

¶ 21 *2. Defendant's Allocution*

¶ 22 In allocution, defendant began by apologizing to his brother and his family. Defendant mentioned that his brother had given defendant a key to his house so defendant could take care of the house and pets when they were gone. Defendant never had a problem while he was sober, but as soon as he relapsed, defendant "betrayed his [brother's] trust" and stole from him. Defendant felt guilty and shameful as soon as the drugs wore off and regretted taking the money. Defendant stated he did not try to hide what he had done and instead came forward to his brother and the police.

¶ 23 Defendant informed the court that he was ready to accept the consequences of his actions and commented that no punishment could hurt him worse than the disappointment from his brother.

¶ 24 Defendant insisted that he was sincere every time he was in the courtroom and was not saying things just so he could "get out as soon as possible and go back to using, because that's never been the case." Defendant stated that he worked very hard on getting sober and was grateful that he was still determined to stop using. Defendant stated he would never stop fighting for his sobriety or helping other addicts do the same. He thanked Johnson and said that if Johnson could do it, defendant had no excuse.

¶ 25 Defendant said pride, complacency, and a lack of discipline were what always "lands me back here." Defendant said he had to look inward to solve the problem and planned to use his time in prison to do just that. Defendant thanked the trial court for giving him prior chances because he was able to meet Johnson and other recovering addicts. Defendant concluded by apologizing for letting everyone down.

¶ 26                    3. *The Trial Court's Ruling*

¶ 27 The trial court mentioned which factors in aggravation and mitigation it considered especially relevant. Regarding mitigation, the court noted defendant's criminal conduct did not cause or threaten serious physical harm to another. Regarding aggravation, the court noted, "The defendant has a prior history of criminal activity. That is a significant factor in this case. And a sentence is necessary to deter others from committing the same crime."

¶ 28 The trial court summarized its thoughts about the crime as follows:

> "I have had way too many opportunities to sentence [defendant]. But every time I sentence you, [defendant], I am struck by your intelligence, I am struck by—today I am struck by the evidence, which doesn't surprise me, that when you're sober you are a compassionate, kind individual. That is pretty much what I would have anticipated from my interactions with you at all times. There is no question in

my mind that you, given your intelligence and your experiences just with this court and the things that I have put you through as far as the—*** about everything I could imagine I have thrown your way to try to help you. And this case—these cases, your criminal history, speaks of the power of addiction. And it causes people to do things that they don't want to do and when they're *** under the control *** of the substance of their addiction.

[There is] one thing that so glaringly stands out ***. *** [T]he 2016 theft, the 2017 theft, and the residential burglary charge in 2019 we're dealing with, you impact others when you let your addiction control you. ***

And this case is a—you are a perfect example of the inevitable injury that would result to others if addictions are allowed to come to their—to their full-blown, because it's expensive. And drug dealers don't have a credit program that they allow you to renege on, you know. So you're left with doing what you do.

So your criminal behavior is fueled by addiction. What do I do with that? Well, to a great extent that can be mitigated. But, on the other hand, especially in a case like this where this court has given you so many opportunities, and you have done so much, at some point it becomes clear to the court that a time-out is needed to give you an opportunity to really break from your addiction. I was hopeful that that four-year sentence to the Illinois Department of Corrections would help provide you that and give you some incentives.

But, you know, in looking at some of this, you know, in the 2016 theft case—and those probation orders were violated by other felonies often—but I sentenced you three times in that case. In the 2017 theft case for which you're here

today this is the fourth time I have sentenced you. On that 2016 escape case this is the fourth time I have sentenced you.

*** I would think it's probably *** very difficult for your brother to hold you accountable. But I commend your brother for holding you accountable, because I think that's the type of love that's necessary, is to be—I hear he has children. Well, he needs to be able to communicate to those children that there are consequences for inappropriate behavior. And you need to know that there are consequences. It's not his fault that you're where you're at. It's your fault.

And I hear from Mr. Johnson. And you knew better. You knew better. You knew there were people you could reach out to. And you know that. And I'm not— I'm not trying to tell you things you don't already know. But it's important to reflect on that. That when the addiction starts pounding away you have to reach out to people. *** When you get out of prison that addiction is going to be there knocking you wanting to invite you to the party again. And you have to get yourself prepared to deal with that. But society, your family, needs to be free from your criminal behavior."

¶ 29 The trial court sentenced defendant to 3 years in prison for escape, 5 years for the 2017 theft, and 12 years for residential burglary, with the sentences to run concurrently.

¶ 30 This appeal followed.

¶ 31 II. ANALYSIS

¶ 32 Defendant appeals, arguing the trial court's sentence was excessive and constituted an abuse of discretion. We disagree and affirm.

¶ 33 A. The Applicable Law

¶ 34       "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "The trial court has broad discretionary powers when selecting an appropriate sentence." *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 37, 99 N.E.3d 571. "The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 102, 126 N.E.3d 703.

¶ 35       The Unified Code of Corrections (Unified Code) (730 ILCS 5/1-1-1 *et seq.* (West 2018)) sets forth mitigating and aggravating factors that the trial court must consider when determining an appropriate sentence. *People v. Musgrave*, 2019 IL App (4th) 100708, ¶ 54, 141 N.E.3d 320. A defendant's "history of prior delinquency or criminal activity" and the need "to deter others from committing the same crime" are aggravating factors. 730 ILCS 5/5-5-3.2(a)(3), (7) (West 2018). It is a mitigating factor if a "defendant's criminal conduct neither caused nor threatened serious physical harm to another." *Id.* § 5-5-3.1(a)(1).

¶ 36       "Under the Unified Code, drug addiction is not an explicit factor in mitigation or aggravation." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 105; see also 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2018). Accordingly, "the trial court is not required to view drug addiction as a mitigating factor." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 105; see also *People v. Madej*, 177 Ill. 2d 116, 139, 685 N.E.2d 908, 920 (1997). "Instead, a history of substance abuse is a 'double-edged sword' that the trial court may view as a mitigating or aggravating factor." *Sturgeon*, 2019 IL App (4th) 170035, ¶ 105 (quoting *People v. Mertz*, 218 Ill. 2d 1, 83, 842 N.E.2d 618, 662 (2005)). To that point, "the court could have properly concluded that defendant's drug addiction lessened his

rehabilitative potential, increased the seriousness of the offense, increased the need to protect society, and increased the need for deterrence." *Id.* ¶ 108.

¶ 37 "The weight to be given to any *proper* factor *** is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." (Emphasis in original.) *Id.* ¶ 104. The appellate court may not substitute its judgment for that of the trial court merely because it might have weighed those factors differently. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11, 65 N.E.3d 419. Further, a reviewing court presumes that a sentence imposed within the statutory range provided by the legislature is proper. *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 16, 138 N.E.3d 743.

¶ 38 A trial court's sentence is an abuse of discretion only if it is greatly at odds with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Geiger*, 2012 IL 113181, ¶ 27, 978 N.E.2d 1061. The trial court's sentence is entitled to "great deference because the trial court is in the best position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15, 82 N.E.3d 693.

¶ 39                                B. This Case

¶ 40 Defendant argues that the sentence in this case is disproportionate to the nature of the offense given the specific circumstances presented. Specifically, defendant notes that he used a key to gain access to the residence while no one was home and merely took a change jar with an unspecified amount of money. Defendant was under the influence of drugs when he committed the offense and used the money to obtain drugs. Defendant immediately admitted to the crime when confronted and was completely honest with the police about his drug use.

¶ 41 Defendant further points out that this crime was very similar to his past offenses.

Defendant's thefts were usually from family, never contemplated or threatened any violence, and were for the purpose of obtaining drugs during a relapse. Defendant accepted responsibility and was committed to getting sober, which he had done before. When he was sober, defendant was steadily employed and volunteered frequently at NA meetings helping others struggling with addiction. Defendant argues that these mitigating factors, taken together, render excessive his 12-year sentence, which is just three years below the maximum.

¶ 42        We are not unsympathetic to defendant's assertions. Certainly, defendant's criminal conduct did not contemplate or threaten harm and was not as egregious as other cases we have seen. But the question before us is not whether this court or any other court *might* have weighed the mitigating and aggravating factors differently. Instead, we ask if the trial court on this record abused its discretion.

¶ 43        Here, the trial court's sentence, though toward the top end of the range, was supported by the evidence. The court was very familiar with defendant and had given him many previous chances to avoid prison. The court repeatedly sentenced defendant to probation, even after defendant violated the terms of his earlier probation or committed new offenses.

¶ 44        The trial court apparently considered defendant's addiction as an aggravating factor and based this conclusion on defendant's (1) multiple failed opportunities with lesser sentences, (2) pattern of stealing from his family to feed his addiction, and (3) intelligence, honesty, and awareness of what he needed to do to stay sober. In essence, the court determined that defendant had failed to demonstrate rehabilitative potential and defendant's family and the community needed to be protected from his criminal conduct. Defendant's addiction, or more precisely his inability to stop committing crimes in furtherance of that addiction, was exactly what caused the court to conclude that such a high sentence was necessary.

¶ 45    Whether a lengthy prison sentence is the best thing for defendant and his addiction is again not the question before us. And this court will not substitute its judgment for that of the trial court merely because it might have weighed the sentencing factors differently. *Wilson*, 2016 IL App (1st) 141063, ¶ 11. The legislature has provided a sentencing range for residential burglary and identified dozens of factors for sentencing courts to take into account when considering that range. Here, the trial court gave thorough consideration to the relevant factors, as well as defendant's history, characteristics, and individual circumstances, and the court selected a sentence within that range. The court determined that defendant's rehabilitative potential was significantly outweighed by the need to protect society from defendant. Although the sentence was lengthy, we cannot conclude that it was inappropriate or an abuse of discretion. Accordingly, we affirm the trial court's judgment.

¶ 46    C. Defendant's Citation to a Scientific Study Not in the Record

¶ 47    In support of defendant's argument that the trial court abused its discretion by imposing a 12-year prison sentence in this case, defendant's brief contains the following:

> "Incarcerating [defendant] for twelve years will not cure his drug addiction. Roger K. Przybylski, *Correctional and Sentencing Reform for Drug Offenders: Findings on Selected Key Issues* (2009) ('A large body of scientific evidence indicates that the incarceration of drug offenders does not have a significant deterrent effect on drugs [*sic*] use.')[.] As a result, the lengthy sentence will not deter him from stealing to feed his drug addiction."

¶ 48    The State argues that defendant's use of the Przybylski article in support of his claim that the trial court abused its discretion is improper for multiple reasons. "First, defendant's sentence is not simply designed to 'cure' his addiction; it is designed (among other things) to

rehabilitate and punish."

¶ 49 Second, "the record contains no evidence that defendant has ever been examined by Mr. Przybylski."

¶ 50 Third, "this article was written by an advocate as part of a 'project funded by the Colorado Criminal Justice Coalition,' " and use of such material for the first time on appeal is prohibited by the decision of the Illinois Supreme Court in *People v. House*, 2021 IL 125124, ¶ 29, which rejected the appellate court's use in that case of articles from "advocacy groups."

¶ 51 In response to the State's arguments, defendant cites only the dissenting opinion of Justice Michael Hyman of the First District Appellate Court in *Wilson*, 2016 IL App (1st) 141063, ¶ 29 (Hyman, P.J., dissenting), in which Justice Hyman (1) agreed with the defendant's argument in that case that the trial court abused its discretion by imposing a 15-year sentence in what (the defendant argued) was a relatively minor drug case and (2) cited the same Przybylski article in support of his view.

¶ 52 We agree with all of the State's arguments and emphatically reject any consideration of the Przybylski article when considering defendant's appeal in this case.

¶ 53 In *House*, the supreme court addressed the defendant's argument that his sentence violated the proportionate penalties clause of the Illinois Constitution. *House*, 2021 IL 125124, ¶¶ 1-3. The supreme court noted that no evidentiary hearing was held relating to how the evolving science on juvenile maturity and brain development applied to the specific facts and circumstances of the *House* defendant's case. Because of the absence of any such evidence, the trial court in *House* "made no factual findings critical to determining whether the science concerning juvenile maturity and brain development applies equally to young adults, or to [the *House* defendant] specifically, as he argued in the appellate court." *Id.* ¶ 29.

¶ 54 Importantly for the present case, the supreme court wrote the following in explanation of its reversal of the appellate court in *House*:

> "[T]he appellate court's opinion equating young adult offenders to juvenile offenders relied on articles from a newspaper and an advocacy group. As the State points out, no trial court has made factual findings concerning the scientific research cited in the articles, the limits of that research, or the competing scientific research, let alone how that research applies to petitioner's characteristics and circumstances." *Id.*

¶ 55 We note that although three justices of the Illinois Supreme Court concurred in part and dissented in part with the appellate court's opinion in *House*, none of those three justices expressed any disagreement with the above statement.

¶ 56 Even though *House* is only a few months old, any doubt about the supreme court's rejection of the appellate court's use of materials like the Przybylski article was put to rest by the even more recent decision of the Illinois Supreme Court in *People v. Cline*, 2022 IL 126383. In *Cline*, the defendant challenged the sufficiency of the State's evidence linking the defendant to the crime scene by two fingerprints in light of the methodology employed by the State's fingerprint expert. *Id.* ¶ 32. The First District Appellate Court found that argument persuasive, but the supreme court rejected it and reversed the appellate court. *Id.* ¶ 36. The supreme court explained its decision, in part, as follows:

> "[D]efendant did not attempt to show through cross-examination any flaws in [the State's expert witness's] methodology in reaching his conclusion that the two prints matched. *** Instead, defendant is now asking this court to take judicial notice of extra-record materials for the purpose of evaluating the evidence presented at trial.

Our review of the sufficiency of the fingerprint evidence in this case, however, must be limited to evidence actually admitted at trial, and judicial notice cannot be used to introduce new evidentiary material not considered by the fact finder during its deliberations. See, *e.g.*, *People v. Barham*, 337 Ill. App. 3d 1121, 1130[, 788 N.E.2d 297] (2003).

We recognize the importance of preventing errors based on fingerprint evidence, particularly in a case such as this where there is no other evidence linking defendant to the crime. However, defendant's argument, like the reasoning of the appellate court below, wholly ignores the role of a reviewing court in considering the sufficiency of the evidence. It is not the function of a court of review to retry a defendant [citation], *nor is it permissible for a reviewing court to take judicial notice of material that was not considered by the trier of fact in weighing the credibility of an expert witness's testimony.*" (Emphasis added.) *Id.* ¶¶ 32-33.

¶ 57    Although we acknowledge that the supreme court in *Cline* was dealing with weighing the credibility of an expert witness's testimony, we believe the supreme court's analysis applies fully in other contexts.

¶ 58    Based upon *Cline* and *House*, we conclude it is impermissible for a reviewing court to take judicial notice of material that was not considered by the trial court when a defendant, as here, is challenging the trial court's exercise of discretion.

¶ 59    In further support of this conclusion, we note what the Fifth District Appellate Court said in *People v. Barham*, 337 Ill. App. 3d 1121, 1130, 788 N.E.2d 297, 304 (2003)—the case cited by the supreme court in support of its holding in *Cline*. The Fifth District wrote the following: "A reviewing court will not take judicial notice of critical evidentiary material that was

not presented to and not considered by the fact finder during its deliberations. [Citations.] Judicial notice cannot be extended to permit the introduction of new factual evidence not presented to the trial court." *Id.*

¶ 60 The impropriety of defendant's citing to the Przybylski article is exacerbated by the fact that defendant is claiming in this appeal that the trial court abused its discretion by imposing a 12-year sentence. The exacerbating circumstance is that defendant is asking this court to reverse the trial court's exercise of discretion by considering—at least in part—the Przybylski article that defendant never presented to the trial court at the sentencing hearing. We reject defendant's attempt to do so and reiterate what this court has written in the past about efforts to seek the reversal of a trial court based upon an argument (or questionable authority) the trial court never heard:

>"If this court were to reverse (as the dissents suggests) on the basis that plaintiff's proposed amended complaint might be sufficient to state a cause of action, we would be doing so based upon an argument the trial court never heard. Over 15 years ago, in *In re Marriage of Harper*, 191 Ill. App. 3d 245, 246, 547 N.E.2d 574, 575 (1989), this court expressed our great reluctance to make such a ruling, and we are no less reluctant now." *Jackson v. Alverez*, 358 Ill. App. 3d 555, 564, 831 N.E.2d 1159, 1166-67 (2005).

>"We will not reverse the trial court's decision based on an argument the trial court never heard." *Bachman v. General Motors Corp.*, 332 Ill. App. 3d 760, 793, 776 N.E.2d 262, 292 (2002).

>"Because [defendant] failed to raise this issue in the trial court, his request that we reverse the trial court based upon this argument would mean that we would be reversing the trial court's decision based upon an argument it never heard." *Dale*

*v. Bennett*, 2021 IL App (4th) 200188, ¶ 44.

¶ 61                                    III. CONCLUSION

¶ 62        For the reasons stated, we affirm the trial court's judgment.

¶ 63        Affirmed.

**No. 4-20-0599**

| | |
|---|---|
| **Cite as:** | *People v. Klein*, 2022 IL App (4th) 200599 |
| **Decision Under Review:** | Appeal from the Circuit Court of Woodford County, No. 19-CF-205; the Hon. Charles M. Feeney III, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Richard Connor Morley, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Gregory M. Minger, State's Attorney, of Eureka (Patrick Delfino, David J. Robinson, and James C. Majors, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |