NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240841-U

NO. 4-24-0841

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JAROB KABEL GRINNAGE, | ) | No. 23CF663 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed (1) defendant's conviction, holding the State
presented sufficient evidence and (2) defendant's sentence, holding defendant did
not show the trial court abused its discretion in imposing an 18-year extended-term
sentence.

¶ 2     Defendant, Jarob Kabel Grinnage, appeals from his (1) conviction of possession
with intent to deliver of 1 gram or more but less than 15 grams of a substance containing cocaine
(720 ILCS 570/401(c)(2) (West 2022)) and (2) extended-term sentence of 18 years' imprisonment.
We affirm.

¶ 3                                 I. BACKGROUND

¶ 4     The State charged defendant with possession with intent to deliver 1 gram or more
but less than 15 grams of a substance containing cocaine (*id.*) and simple possession of less than
15 grams of a substance containing cocaine (*id.* § 402(c)). He waived his right to a jury trial.

¶ 5        At defendant's bench trial, the State called as witnesses four officers from the Bloomington Police Department (BPD) and a juvenile, K.W., who was 17 years old at the time of trial. K.W. testified after the parties entered stipulations relating to forensic testing of the cocaine.

¶ 6        K.W. identified defendant as a friend of her best friend's grandmother, whom she knew as "Shortie." As of July 6, 2023, she had known defendant for about a month and had previously seen him two or three times. On July 6, she met with defendant, who had a white Tesla he wanted her to drive for him. She had previously driven for him seven or eight times. Every time she drove for him, he would tell her where to make stops. She was not compensated for her work except for being allowed to drive the car, something she enjoyed because it could go fast.

¶ 7        K.W. agreed she had made multiple stops for defendant on July 6, but she said she did not remember exactly how many stops she had made. She testified she did not remember telling BPD officers she had made 11 stops. On the night of July 6, two officers of the BPD conducted a traffic stop of the car K.W. was driving. Before the stop, defendant handed her what she agreed was a "plastic baggie" and told her "to hide it in the best place [she] could." She hid the bag in her underpants. When she learned she would be searched, she handed the bag over to the officers.

¶ 8        After the traffic stop, Officer Logan Fosdick of the BPD gave K.W. a ride to her home. K.W. remembered, during the ride, she told Fosdick where she had made the last stop. She also recalled saying she had agreed to meet defendant that day "in Holton Homes." She accepted the State's characterization that most of the stops were "relatively brief in duration." Finally, she agreed she "didn't go grocery shopping or anything like that."

¶ 9        On cross-examination, K.W. agreed to defense counsel's suggestions she had committed several offenses on July 6. Her own vehicle insurance had lapsed. She failed to signal a right turn 100 feet before she made it. She gave an ambiguous response to whether a

"[tetrahydrocannabinol (THC)] vape pen" was in the car's center console, but she then admitted she had access to the pen while driving. She further agreed the officers neither questioned her whether she was intoxicated nor asked her to submit to any tests for drug use or intoxication.

¶ 10 K.W. also agreed she initially lied about the presence of drugs in the car. When the officers stopped the car, they asked K.W. what was in the car. She told them, "[N]othing as far as I know." The officers asked her whether she "had anything on [her] that [she] shouldn't have"— they specifically asked about cannabis and cocaine. She said she had neither. However, when the officers said she and the car could be searched "because of the dog alerts," and, as the driver, she could be considered to have control over everything in the car, she agreed defendant had handed her something. She said she had never seen any money exchanged.

¶ 11 K.W. further agreed the officers had told her she was not going to "get in trouble." She initially told "the officer" she could not remember where she last stopped, but she then later took officers to "where [she] had been." The police had thanked her for her help and had never suggested she would be charged with any offense. (She was ticketed for failing to properly signal a turn.)

¶ 12 Officer Andrew Chambers identified himself as a BPD canine officer. He testified, at about 9:20 p.m. on July 6, "Officer Elston" asked him to make a traffic stop of a white 2023 Tesla, which Elston had observed making a turn without signaling properly. Chambers caught up to the car and pulled it over. Elston arrived and spoke to the driver while Chambers spoke to the passenger—defendant—who was seated in front. Chambers ran defendant's date of birth, which he learned was in April 1971.

¶ 13 Chambers asked K.W. and defendant to exit the car so he and his dog could "conduct a free-air sniff." The dog "indicate[d] positive for drugs on the Tesla." A search of the

car revealed cannabis residue on the floor and a THC vape pen in the center console but no controlled substances. Another officer searched defendant; Chambers agreed the officer found $657 in defendant's pocket. Defendant told the officers he was going to go grocery shopping at Walmart and said the car belonged to his "Uncle Moses," whose last name he did not know.

¶ 14 Chambers testified the baggie he saw field-tested for cocaine was "a large plastic baggie with six individual baggies inside *** [containing] a hard white chunky substance that tested positive for crack cocaine." Chambers spoke briefly to K.W., who stated she got the baggie from defendant, but it "was Huck's."

¶ 15 Officer Fosdick testified he participated in the stop of the white Tesla and spoke to K.W. His testimony was consistent with her testimony she initially denied the presence of drugs but then surrendered the baggie when she learned she would be searched. Fosdick added K.W. had said defendant had given the bag to her "moments before the traffic stop was initiated." She further told him she thought she had made approximately 11 stops for defendant that day. She explained defendant aways had the drugs with him when she picked him up; all she had to do was meet him at "Holton Homes" and drive him where he asked her to go.

¶ 16 Officer Stephen Brown of the BPD testified as an expert in drug distribution. He said the packaging of the cocaine was consistent with an intent to distribute. Nothing in the white Tesla suggested either K.W. or defendant was using cocaine at the time of the stop, and the search did not disclose any paraphernalia for the use of crack cocaine in the car, which also suggested the two were distributing the cocaine, not using it. Further, he was aware some drug dealers worked with drivers. Finally, "[i]n [his] experience *** from time to time [he had] seen several male subjects that are selling drugs have a female in the vehicle."

¶ 17 Defendant declined to present any evidence.

- 4 -

¶ 18		The trial court found defendant guilty on both counts. It said it considered how pieces of evidence of "limited value" when taken alone "add[ed] up" to meet the State's burden of proof. It stated it did not credit all of K.W.'s testimony: "She seemed to be minimizing on some things." However, it found credible her testimony she had complied with defendant's request to hide the baggie.

¶ 19		Defendant filed a posttrial motion, arguing, *inter alia*, the evidence was insufficient to support either conviction. The trial court, in denying the motion, reiterated its belief K.W. was telling the truth when she testified defendant had asked her to take the baggie. The court noted its conclusion was based on its evaluation of her demeanor.

¶ 20		At the sentencing hearing, the trial court ruled the simple possession conviction merged into the possession-with-intent-to-deliver conviction.

¶ 21		The State presented evidence on August 16, 2023—*i.e.*, after defendant was released from custody in this case—showing defendant sold 14.7 grams of cocaine to an informant participating in a controlled purchase operation.

¶ 22		Defendant offered no evidence in mitigation.

¶ 23		The trial court noted, regarding a prior conviction, defendant had filed a petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) in Will County, and after the Will County trial court summarily dismissed the petition, the Appellate Court, Third District, remanded the matter for further proceedings. *People v. Grinnage*, 2021 IL App (3d) 180318-U, ¶ 19. The Third District found he had stated the gist of a claim appellate counsel on direct appeal was ineffective for failing to argue the State failed to prove him guilty beyond a reasonable doubt. *Id.* ¶¶ 14, 17. However, the trial court determined the proceedings on remand were ongoing and considered the challenged conviction (for and unlawful possession of a

controlled substance with intent to deliver (720 ILCS 570/ 401(c)(2) (West 2014))) remained a part of defendant's criminal record.

¶ 24　　　　The State argued the evidence showed defendant was a career drug dealer. He had received five felony sentences and yet made another drug sale slightly over a month after being arrested in this case. It asked the trial court to impose the maximum extended-term sentence of 30 years' imprisonment.

¶ 25　　　　Defendant argued the trial court should consider trauma he experienced as a mitigating factor: his mother was murdered when he was nine years old and his wife was murdered in 2018. In 1988, as a juvenile, he was involved in violent offenses. According to defendant, there were "essentially no violent criminal offenses since then." He further stated he had never received any alcohol or substance abuse treatment. He therefore argued for a minimum sentence.

¶ 26　　　　The trial court sentenced defendant to an extended term of 18 years' imprisonment. The court stated it had considered all the statutory factors in aggravation and mitigation. It found defendant's traumatic life was mitigating, but he now needed to accept responsibility for his own actions.

¶ 27　　　　The trial court noted the longest gap between periods of incarceration occurred between a sentence defendant received in 1994 and a 10-year sentence he received in 2007. He was then convicted in a 2015 case—the Will County case—and received a six-year sentence. Another conviction for a 2020 case followed. The court thus concluded a significant part of the reason defendant did not have a longer criminal record was his repeated incarcerations. The court further found the following:

> "I'm looking at [your record] in light of what those felonies are, whether or not you're learning, and the timing of those felonies, and it seems that you have made

a definite choice over a couple of decades here that this is how you want to live your life, that you want to be involved with dealing drugs.

I recognize there's a lot of things that happen to us in our life, and certainly when you were younger things that weren't your choice, but at this point you are making choices. I don't take extended term sentences lightly."

¶ 28 Defendant did not file a postsentencing motion.

¶ 29 This appeal followed.

¶ 30 II. ANALYSIS

¶ 31 On appeal, defendant argues, because K.W. was a highly biased witness who thus lacked credibility and her testimony defendant handed her the baggie containing cocaine was central to the State's case, the State's evidence was insufficient to support his conviction. Alternatively, he contends the trial court's imposition of an extended-term sentence of 18 years' imprisonment was first-prong plain error. We address each argument in turn.

¶ 32 A. The Sufficiency of the Evidence

¶ 33 When evaluating the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); see *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (adopting the *Jackson* standard). It is not the function of a reviewing court to retry the defendant, nor may we "substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses." *People v. Conway*, 2023 IL 127670, ¶ 16.

¶ 34 The trial court, in its role as the trier of fact, has the responsibility to resolve any

conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. *People v. Galarza*, 2023 IL 127678, ¶ 25. "[A]ll reasonable inferences from the evidence must be allowed in favor of the State." *People v. Baskerville*, 2012 IL 111056, ¶ 31. A trier of fact may reasonably accept a witness's testimony either in part or in whole. *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67. "A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Conway*, 2023 IL 127670, ¶ 16.

¶ 35        To support a conviction based on actual possession of a controlled substance, the State must show the substance was "in the immediate and exclusive control of defendant." *People v. Frieberg*, 147 Ill. 2d 326, 360 (1992). "The rule that possession must be exclusive does not mean *** that the possession may not be joint." *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Evidence a defendant has hidden or disposed of a substance is evidence the defendant had dominion over the substance. *People v. Carodine*, 374 Ill. App. 3d 16, 25 (2007).

¶ 36        Here, defendant argues K.W.'s testimony defendant handed her the baggie and told her to hide it could not reasonably be deemed credible. Citing *People v. Smith*, 141 Ill. 2d 40 (1990), he notes, "while the determination of the credibility of witnesses [by the trier of fact] is entitled to great weight, it is not conclusive." Citing cases concerning defendants' entitlement to have juries cautioned about the potential for bias a witness has when they expect leniency based on their testimony for the State, he contends this kind of bias was at work in this trial. Defendant points out K.W. appeared to have understood she would avoid possible criminal charges by implicating him. Defendant contends it was notable the State did not attempt to corroborate K.W.'s testimony he gave her the baggie with forensic evidence. Defendant further argues K.W.'s credibility was critically undermined because she lied to the police until she knew she would get

caught when she was searched.

¶ 37    The State contends its case was built on adequate circumstantial evidence. It argues the claims K.W. was an incredible witness and possessed the cocaine are "unfounded" given the trial court's conclusion her testimony she received the baggie from defendant was credible. In reply, defendant argues the State failed to address the bias inherent in accomplice testimony.

¶ 38    We find the State's evidence was sufficient to sustain defendant's conviction. K.W.'s testimony defendant handed her the baggie containing individual packets of crack cocaine is enough to establish defendant's possession of the cocaine. See *Carodine*, 374 Ill. App. 3d at 25 (stating evidence a defendant has hidden or disposed of a substance is evidence the defendant had dominion over the substance). The court could reasonably have found K.W.'s statement defendant handed the baggie to her and told her to hide it credible. We note defendant does not challenge the sufficiency of the evidence as it relates to intent to distribute the cocaine.

¶ 39    First, the trial court noted its determination K.W. was testifying truthfully about the transfer of the baggie was based in significant part on K.W.'s demeanor. The ability to observe witnesses' demeanor is a core reason for our deference to triers of fact on questions of fact. See, *e.g.*, *People v. Radojcic*, 2013 IL 114197, ¶ 34 (stating our deference to triers of fact is based in their superior ability to evaluate live testimony).

¶ 40    Second, K.W.'s statement was part of a coherent body of evidence consistent with the conclusion defendant was directing K.W.'s actions as part of his business of delivering cocaine. That BPD officers recovered both $657 in cash and six small baggies of crack cocaine from the car was highly suggestive the passenger was engaged in delivering the cocaine to customers. Further, defendant was more plausible as the principle of the operation than as a subordinate or equal partner. Defendant was a 52-year-old adult; K.W. was a juvenile. The car the two were in

was a late-model Tesla defendant supplied. K.W. was the one holding the bag at the traffic stop, while defendant was the one holding the cash. Thus, K.W.'s testimony defendant told her to take and hide the baggie was entirely consistent with the larger picture.

¶ 41            Third, this case is distinguishable from *Smith*, which defendant cites for the power of reviewing courts to reject unreasonable credibility determinations despite the deference given to triers of fact.

¶ 42            In *Smith*, a single witness provided the evidence on which the State's case "hinge[d]" (*Smith*, 185 Ill. 2d at 542), but the supreme court held the witness's testimony had been discredited to the point no reasonable trier of fact could believe it (*id.* at 545). The testimony of the critical witness (1) was inconsistent on many points with other witnesses who had a better or equal view of the events (*id*. at 542-44), (2) was repeatedly impeached by her prior inconsistent statements (*id.* at 544), (3) included a description of the witness behaving in an implausible way (*id.*), and (4) was tainted by possible bias (*id.*).

¶ 43            Here, K.W. was not comprehensively discredited the same way the witness in *Smith* was. To be sure, she initially lied to BPD officers about having anything she suspected to be drugs on her person. She also had a motive to implicate defendant: hope that her cooperation would help her avoid criminal or traffic charges. However, these were factors for the trial court to weigh. The law does not treat such factors as *necessarily* discrediting. See, *e.g.*, *People v. McLaurin*, 184 Ill. 2d 58, 79 (1998). ("[W]hile subject to careful scrutiny, the testimony of an accomplice, whether it is corroborated or uncorroborated, is sufficient to sustain a criminal conviction if it convinces the jury of the defendant's guilt beyond a reasonable doubt."). Moreover, unlike the witness in *Smith*, K.W.'s testimony did not clash with the rest of the evidence.

¶ 44            Finally, we find defendant's assertion the State's evidence was somehow

discredited by its failure to seek forensic testing of the baggie unpersuasive. Defendant has not explained why such evidence would be expected to be informative. Thus, its absence is not telling.

¶ 45                                 B. Plain Error at Sentencing

¶ 46          In the alternative, defendant argues, even if the evidence was sufficient to support his conviction, as a matter of first-prong plain error, his extended-term sentence was excessive. Specifically, defendant contends his sentence was excessive considering the nature of his offense, his lack of a violent criminal history, and the fact he was in the process of challenging one of his prior convictions. The State maintains defendant's argument amounts to an improper request to reweigh the factors in aggravation and mitigation. According to the State, no error occurred, let alone plain error.

¶ 47          A trial court's sentencing decision which falls within the statutory sentencing range will generally not be disturbed on appeal absent an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The reviewing court's role is not to reweigh the sentencing factors or substitute its judgment for that of the trial court. *People v. Klein*, 2022 IL App (4th) 200599, ¶ 37. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20, (quoting *People v. Fern*, 189 Ill. 2d 48, 54 (1999)).

¶ 48          Defendant concedes he forfeited his excessive-sentence claim by failing to file a postsentencing motion but asks that we review it as a matter of first-prong plain error. See *People v. Hillier*, 237 Ill. 2d 539, 544 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). In the sentencing context, this court may disregard a defendant's forfeiture under the

plain-error doctrine when a clear or obvious error occurred and "(1) the evidence at the sentencing hearing was closely balanced [(first-prong plain error)], or (2) the error was so egregious as to deny the defendant a fair sentencing hearing [(second-prong plain error)]." *Id.* at 545. However, "[w]ithout reversible error, there can be no plain error." *People v. Jackson*, 2020 IL 124112, ¶ 88. The defendant bears the burden of persuasion in establishing plain error. *Id.*

¶ 49        Here, defendant's argument amounts to a request we reweigh the sentencing factors and thus substitute our judgment for that of the trial court. It is not our role to entertain such a request. *Klein*, 2022 IL App (4th) 200599, ¶ 37. Defendant also contends the court erred in its consideration of the Will County conviction he challenged. He maintains the Third District "called into question the validity of one of his prior convictions when it advanced his post-conviction petition to the second stage of proceedings on the grounds that appellate counsel was ineffective for not arguing the State did not meet its burden[of proof]." However, because defendant does not suggest the court's consideration of that conviction was somehow legally improper, we conclude, as with the rest of his sentencing claim, he is arguing we should reweigh a sentencing factor. As stated, this is not our role.

¶ 50        Because defendant has called only for the reweighing of sentencing factors considered by the trial court, he has not shown his sentence was an abuse of the court's discretion. *Id.* Because we determine the court did not abuse its discretion, we necessarily cannot find plain error. See *People v. Naylor*, 229 Ill. 2d 584, 602 (2008) (stating without error, there can be no plain error).

¶ 51                                III. CONCLUSION

¶ 52        For the reasons stated, we affirm defendant's conviction and sentence.

¶ 53        Affirmed.