NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220691-U

NO. 4-22-0691

IN THE APPELLATE COURT

FILED
August 22, 2023
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| AAROM J. MEZO, | ) | No. 21CF31 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Harris and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not abuse its discretion in sentencing defendant to concurrent terms of four and a half years in prison for two counts of disorderly conduct.

¶ 2    Defendant Aarom J. Mezo pleaded guilty to two Class 4 felony counts of disorderly conduct (720 ILCS 5/26-1(a)(4) (West 2020)) for falsely reporting to two Woodford County sheriff's officers that he had been the victim of a domestic battery. Defendant was eligible for extended-term sentencing due to his criminal history, and the trial court sentenced him to two concurrent terms of four and a half years in prison. On appeal, defendant argues that his prison sentence is excessive and asks us to reduce his sentence to the extended-term minimum of three years or to remand for resentencing. Because the trial court did not abuse its discretion in sentencing defendant, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4        On October 21, 2020, defendant committed a domestic battery and was detained by the Woodford County Sheriff's Office. While detained, defendant told Deputy Thomas McGuire that he had been hit three times by Sabrina Goetz, a family or household member. Twenty minutes later, defendant repeated this allegation to Deputy Cody Geick. Defendant later admitted these reports were fictitious and he had never been the victim of domestic violence by Goetz. Defendant was charged for the domestic battery in Woodford County case No. 20-CM-115; in January 2021, he was sentenced to 24 months' probation on that charge. The State filed a petition to revoke defendant's probation in April 2021 and a supplemental petition to revoke in July 2021.

¶ 5        In February 2021, the State charged defendant in Woodford County case No. 21-CF-31 with one count of disorderly conduct for falsely reporting a domestic battery to Deputy Geick. In December 2021, a grand jury indicted defendant for the same offense and an additional count of disorderly conduct for the false report to Deputy McGuire.

¶ 6        Defendant admitted the allegations against him in the petitions to revoke his probation and pleaded guilty to the two counts in the indictment. At sentencing in April 2022, the trial court sentenced defendant to 350 days in jail on the petitions to revoke and to concurrent terms of four and a half years in the Illinois Department of Corrections on the felony counts of disorderly conduct. Defendant appealed only from his sentence on the disorderly conduct counts.

¶ 7        The trial court's sentencing determination and the parties' arguments primarily revolve around defendant's conduct between the date of the offenses and the sentencing hearing.

¶ 8                              A. Defendant's Conduct

¶ 9        Defendant was arrested in February 2021 and posted bond in March 2021. After he failed to appear at a subsequent court appearance, the trial court issued a warrant for his arrest.

Defendant's whereabouts were unknown because he had failed to notify the Woodford County probation department that his address and phone number had changed.

¶ 10 Defendant was arrested again in May 2021 and charged with obstructing identification (*id.* § 31-4.5) and possession of drug paraphernalia (720 ILCS 600/3.5 (West 2020)) in Woodford County case No. 21-CM-45. At defendant's bond hearing, he claimed he had no way of showing up to his previous court date because he could not get a ride. The trial court admonished defendant to appear voluntarily, stating that when a defendant showed up late to court, even as late as the following day, the court would recall the warrant. After a bond reduction hearing, defendant posted bond on the disorderly conduct charge and the petition to revoke and was released.

¶ 11 In June 2021, defendant consumed methamphetamine, contacted Goetz in an abusive or harassing manner, and failed to complete a court-ordered domestic violence evaluation. Defendant was charged with three traffic infractions in Woodford County case Nos. 21-TR-714, 21-TR-715, and 21-TR-716. Defendant was arrested again and charged in Marshall County case No. 21-CF-27 for committing two aggravated domestic batteries (720 ILCS 5/12-3.3 (West 2020)) against Goetz. Defendant pleaded guilty to one of the aggravated domestic battery charges in July 2021 and was sentenced to 24 months' probation. A subsequent revocation of his probation is the subject of a separate appeal and will be addressed separately in appellate case No. 4-23-0064.

¶ 12 Defendant failed to appear for trial in September 2021, so the trial court revoked his bond. Defendant was arrested in October 2021; at his bond hearing, the trial court again admonished him for failing to appear voluntarily after missing court and stated that "a historical problem with [defendant was] getting [him] to show up." Defendant's bond was reduced, but he failed to post bond and remained in custody.

¶ 13        In January 2022, defendant appeared before the trial court to plead guilty to the counts of disorderly conduct and admit the allegations in the petitions to revoke his probation. The trial court accepted defendant's open plea and explained it could impose a sentence anywhere between the minimum and maximum sentence the law would allow. Pursuant to the plea agreement, case No. 21-CM-45 was dismissed on the State's motion.

¶ 14        In February 2022, the trial court held a hearing on defendant's motion to reduce his bond to personal recognizance so he could participate in a residential substance abuse treatment program. The court stated:

> "[Defendant] has a terrible record. But I think if he completes a period of treatment, it is—seems pretty clear to me that he has a substance abuse issue. And if he completes a period of treatment, then that communicates something. If he leaves treatment against staff advice, if he doesn't complete his treatment, that also strongly indicates something else.
>
> And so I really—I hope you appreciate this opportunity and seize it, [defendant], because it will have a tremendous impact on your sentencing."

¶ 15        The trial court proceeded to a sentencing hearing in April 2022.

¶ 16                        B. The Sentencing Hearing

¶ 17        The trial court first heard testimony from a Woodford County probation officer, who reported that defendant had successfully completed the residential substance abuse treatment program, moved to a sober living house for two days, and then left. After defendant left, he gave his Marshall County probation officer a phone number for "Jeremy," allegedly the house manager, who could verify—falsely—that defendant was still staying at the sober living house. Defendant

later admitted that Jeremy was not the house manager but just a friend who lived there. A laboratory drug test showed defendant had used methamphetamine.

¶ 18       The trial court then heard testimony from defendant. He explained he had been using methamphetamine off and on for 23 years and relapsed once after he left the sober living house. Although there were frequent Narcotics Anonymous and Alcoholics Anonymous meetings nearby, he had only attended one. When asked about his aggravated domestic battery charges, defendant testified he "did beat [Goetz] up pretty good," but he did not choke her.

¶ 19       On the disorderly conduct counts, the State sought concurrent terms of four and a half years, and defendant asked for probation or, if the trial court opted for imprisonment, concurrent terms of two and a half years. When pronouncing defendant's sentence, the court recognized the mitigating factors that defendant's conduct did not cause or threaten serious physical harm and defendant would not have contemplated his criminal conduct would cause or threaten serious physical harm to another. As aggravating factors, the court cited defendant's prior history of criminal activity, the fact that he committed a felony while on probation and released on bond, his dishonesty with the Marshall County probation office, his failure to attend substance abuse meetings, his failures to appear in court, the need to deter others, and the need to protect the public. The court sentenced defendant to concurrent terms of four and a half years.

¶ 20       Defendant filed a motion to reconsider his sentence, claiming it violated the Illinois Constitution and was excessive in light of the evidence presented. The trial court held a hearing on the motion and concluded its sentence was rational and reasonable and was given "to impress upon [defendant] the need to conform his conduct to the requirements of the law and also to protect society from his continued felonious and otherwise criminal behavior." The court remarked that it

could have imposed consecutive rather than concurrent terms, in which case the total sentence could have been up to 12 years.

¶ 21    This appeal followed.

¶ 22    II. ANALYSIS

¶ 23    Section 11 of the Illinois Bill of Rights states that all criminal sentences "shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." (Internal quotation marks omitted.) *People v. Klein*, 2022 IL App (4th) 200599, ¶ 34. A sentence that is within the statutory limits prescribed by the legislature carries with it a presumption of validity and will only be reversed when the trial court abuses its discretion. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56. The trial court abuses its discretion when its sentence is manifestly disproportionate to the nature of the offense or greatly at variance with the spirit and purpose of the law. *People v. Fern*, 189 Ill. 2d 48, 54 (1999). When reviewing a sentence for excessiveness, we do not substitute our judgment for the trial court's merely because we might have weighed the sentencing factors differently. *Klein*, 2022 IL App (4th) 200599, ¶ 37.

¶ 24    Defendant does not challenge the trial court's conclusion that his criminal history authorized an extended-term sentence between three and six years for a Class 4 felony. See 730 ILCS 5/5-4.5-45(a) (West 2022). Rather, defendant argues that his mid-range four-and-a-half-year sentence is manifestly disproportionate for "a pair of harmless lies" and that a prison sentence above the extended-term minimum of concurrent three-year terms is greatly at variance with the

spirit and purpose of the disorderly conduct statute. Defendant also argues that the trial court improperly considered the nature and circumstances of his aggravated domestic battery offense, to which he did not plead guilty, purportedly in violation of *People v. Daly*, 2014 IL App (4th) 140624, *abrogated on other grounds by People v. Lawson*, 2018 IL App (4th) 170105, ¶ 25 (disapproving of decisions where this court reduced a sentence of imprisonment to a sentence of probation).

¶ 25        We address each argument in turn.

¶ 26                            A. The Seriousness of the Offenses

¶ 27        We have often pointed out that the seriousness of the offense is the most important sentencing factor, and the trial court need not give greater weight to rehabilitation or mitigating factors than to the seriousness of the offense. See, *e.g.*, *People v. Aquisto*, 2022 IL App (4th) 200081, ¶ 112. In this context, "offense" refers to the particular facts and circumstances of the defendant's offense and not the statutory offense in the abstract. *Id.*

¶ 28        Defendant cites *People v. Stacey*, 193 Ill. 2d 203, 210 (2000), for the proposition that a sentence is excessive when it is manifestly disproportionate to the seriousness of the offense. In *Stacey*, the supreme court found a sentence of two consecutive 25-year terms was manifestly disproportionate to the nature of sexual abuse offenses in which the defendant "momentarily grabbed the breasts of two young girls, who were fully clothed at the time, and *** made lewd comments and gestures." *Id.* However, the court found no abuse of discretion in the trial court's decision to impose consecutive terms. *Id.* at 211. The court reduced the defendant's sentence to two consecutive six-year terms, the statutory minimum, which "comport[ed] with the nature of the offenses while not diminishing the seriousness of [the] defendant's actions." *Id.* at 211-12.

¶ 29        Defendant does not cite any other cases where a sentence was found manifestly disproportionate to the seriousness of the offense, and such cases are exceedingly rare. See, *e.g.*, *People v. Busse*, 2016 IL App (1st) 142941, ¶ 29 (finding sentence of 12 years "grossly disproportionate to the offense of stealing $44 in loose change from a vending machine"); *People v. Allen*, 2017 IL App (1st) 151540, ¶ 15 (finding sentence of 10 1/2 years manifestly disproportionate to the offense of "breaking a truck window and stealing two packs of cigarettes and a cap" that were promptly returned to their owner). *Daly*, which defendant does cite, is not a case where we found a trial court's sentence manifestly disproportionate to the seriousness of the offense. Rather, we found a three-and-a-half-year sentence excessive when, along with other errors, the trial court failed to consider the nature and circumstances of the charged offense *at all.* *Daly*, 2014 IL App (4th) 140624, ¶¶ 30, 34.

¶ 30        In the present case, defendant argues that his mid-range sentence of four and a half years is manifestly disproportionate to what he describes as a pair of harmless lies. But we have declined to craft a "petty offense" exception to statutory sentencing ranges. See *People v. Cunningham*, 2018 IL App (4th) 150395, ¶¶ 49-54 (rejecting the reasoning of *Busse* and *Allen*); see also *People v. McGee*, 2020 IL App (2d) 180998, ¶ 16 (same). In *Cunningham*, the defendant was sentenced to 20 years in prison for burglary when he entered a garage with the intent to commit a theft, even though he did not take anything before he was arrested. *Cunningham*, 2018 IL App (4th) 150395, ¶¶ 1, 3. This court affirmed, holding that even a minor offense can warrant a severe sentence within the statutory range when the defendant has a lengthy criminal history and the potential to recommit similar offenses. *Id.* ¶ 54. In other words, although the seriousness of the offense may be the most important factor, it is not the only factor.

¶ 31        Here, the trial court explicitly considered the seriousness of defendant's offenses and concluded they were "not good" but not "so terribly onerous." Defendant relies heavily on this characterization, but when reviewing a trial court's sentence, we consider the record as a whole and not just a few words or statements. *Daly*, 2014 IL App (4th) 140624, ¶ 38. The record shows the trial court did not disregard the seriousness of the offenses, but rather balanced it against the other relevant factors we have identified: the defendant's history, character, and rehabilitative potential; the need to protect society; and the need for punishment and deterrence. *Klein*, 2022 IL App (4th) 200599, ¶ 34. By focusing solely on the seriousness of the offenses, defendant is asking us to assign less weight to this factor. Even if we were inclined to do so, we would not find an abuse of discretion merely because we might have weighed the factors differently. *Id.* ¶ 37. Because the trial court thoroughly considered the relevant factors and selected a sentence within the statutory range, we do not find the sentence manifestly disproportionate to the seriousness of the offenses. See *id.* ¶¶ 34, 45.

¶ 32                    B. The Spirit and Purpose of the Statute

¶ 33        Defendant argues that his sentence is greatly at variance with the spirit and purpose of the disorderly conduct statute, particularly in light of the sparse details in the State's factual basis. "[T]he disorderly conduct statute is intended to prevent activities performed in an unreasonable manner that would tend to disturb, alarm or provoke others." (Internal quotation marks omitted.) *People v. Fuller*, 187 Ill. 2d 1, 14 (1999). The statute "embraces a wide variety of conduct serving to destroy or menace the public order and tranquility." *In re B.C.*, 176 Ill. 2d 536, 552 (1997). Furthermore, defendant was charged under a subsection of the statute that specifically targets dishonest conduct. The legislature defined this offense as a Class 4 felony and provided for

extended-term sentences of three to six years, which can be served consecutively in certain circumstances. See 730 ILCS 5/5-8-4 (West 2022).

¶ 34    The trial court accurately described this sentencing scheme and imposed a mid-range sentence of four and a half years in prison. The court explained that the disorderly conduct offenses were indicative of "the chaos imposed upon society" by defendant and noted that defendant had been dishonest with his Marshall County probation officer. After weighing the sentencing factors, the court found four and a half years' imprisonment was necessary for the protection of the public and to deter others. This finding is not greatly at variance with the spirit and purpose of a statute targeting dishonest conduct that menaces the public order, particularly when the legislature authorized a total sentence of up to 12 years' imprisonment. Accordingly, the court did not abuse its discretion on this basis.

¶ 35                                        C. *Daly*

¶ 36    Finally, defendant argues that *Daly* counsels in favor of a reduction in his sentence. The State claims this aspect of defendant's argument is forfeited because he failed to raise it before the trial court in his motion to reconsider. In reply, defendant argues that his broad reference to the Illinois Constitution was sufficient, but even if it was not, we should consider the argument under the doctrine of plain error. See *People v. Seal*, 2015 IL App (4th) 130775, ¶ 26 (noting that the plain-error doctrine can bypass forfeiture principles). Because we find defendant has not met his burden of showing any error, we need not determine whether he has met the higher burden of showing plain error. See *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 37 ("Since we have found no error, we need not address plain error.").

¶ 37    Defendant claims *Daly* stands for the proposition that "the trial court cannot base, or even appear to base, its sentence on an offense to which a defendant did not plead guilty"—

here, the aggravated domestic battery against Goetz in June 2021. Defendant's argument falters at the outset because he *did* plead guilty to that offense, albeit in a different case in another county. His conviction was documented in his presentence investigation report, and as the State points out, the trial court was allowed to consider defendant's prior criminal activity as an aggravating factor when it imposed its sentence. See 730 ILCS 5/5-5-3.2(a)(3) (West 2022). Defendant also claims the underlying facts of his aggravated domestic violence conviction were not properly before the trial court, but defendant testified at the sentencing hearing that he "beat [Goetz] up pretty good." Even if defendant had not been convicted of aggravated domestic battery, the trial court would still have been allowed to consider this testimony as evidence of a prior crime of violence. See *People v. Harris*, 359 Ill. App. 3d 931, 936 (2005) (stating that a sentencing court may consider other-crimes evidence that is relevant and reliable).

¶ 38　　　　　Setting these problems aside, *Daly* does not stand for the proposition that a trial court errs by considering a defendant's criminal history, as defendant seems to suggest. This becomes clear when defendant's cited excerpt is placed in context:

> "Our review of the record in this case shows little to indicate the trial court considered 'the nature and circumstance of the offense,' 'the history, character and condition of the offender,' or defendant's rehabilitative potential in fashioning its sentence. *Instead*, the record shows the court considered the nature and circumstances of an offense to which defendant did not plead guilty." (Emphasis added.) *Daly*, 2014 IL App (4th) 140624, ¶ 30.

In other words, a trial court abuses its discretion when it disregards the offense to which the defendant pleaded guilty and proceeds as though it is sentencing the defendant for another offense altogether.

¶ 39        The trial court in *Daly* erred when it appeared to sentence the defendant for aggravated driving under the influence (DUI) instead of reckless homicide, the offense to which she did plead guilty. This court noted several problems with the trial court's decision. The trial court assumed the defendant was intoxicated even though the factual basis for her plea did not say she was intoxicated or imply she drove under the influence of alcohol. *Id.* ¶ 31. There was also no evidence the accident was the direct result of alcohol use and nothing in the record demonstrating defendant had a problem with drugs or alcohol. *Id.* ¶ 33. The trial court focused heavily on deterrence, even though deterrence has less significance for a crime involving unintentional conduct. *Id.* ¶ 32. Instead of considering the general presumption in favor of probation, the trial court emphasized the public policy of the aggravated DUI statute, which required a prison sentence except in extraordinary circumstances. *Id.* ¶¶ 24, 34, 36. The trial court improperly used the victim's death as an aggravating factor, even though the victim's death was implicit in the offense of reckless homicide. *Id.* ¶ 39. In light of these errors, the State conceded that the trial court had abused its discretion in sentencing the defendant. *Id.* ¶ 1. This court agreed. *Id.* ¶ 40.

¶ 40        Here, defendant complains that the trial court erred by focusing heavily on his addiction history and his criminal history, including the aggravated domestic battery. Unlike in *Daly*, however, the trial court here had ample evidence that defendant dealt with substance abuse, had a history of violent crimes, and committed an aggravated domestic battery while released on bond. The court was allowed to consider this evidence as part of its sentencing determination, even though it did not arise from the underlying offenses, and as explained above, the court did not abuse its discretion when balancing this evidence against the seriousness of the offenses.

¶ 41                                III. CONCLUSION

¶ 42        For the reasons stated, we affirm the trial court's judgment.

- 12 -

¶ 43    Affirmed.